D. Samuel Coffman (#011428)
scoffman@dickinsonwright.com
Amanda E. Newman (#032462)
anewman@dickinsonwright.com
**DICKINSON WRIGHT PLLC**
1850 North Central Avenue, Suite 1400
Phoenix, AZ 85004
Phone: (602) 285-5000
Fax: (844) 670-6009
Firm E-Mail: courtdocs@dickinsonwright.com

*Attorneys for Defendant*

### UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| Yvonne L. Roberts,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>ConnectionsAZ LLC,<br><br>　　　　Defendant. | Case No.:<br><br>**NOTICE OF REMOVAL**<br><br>Removed from Superior Court of Arizona, Maricopa County, Case No. CV2020-005070 |

Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant ConnectionsAZ LLC ("Defendant") hereby gives notice of the removal of this action from the Superior Court of the State of Arizona, Maricopa County, to the United States District Court for the District of Arizona, based upon the following grounds.

**Filing of Complaint and Receipt by Defendant**

1.　　On or about April 24, 2020, the plaintiff Yvonne L. Roberts ("Plaintiff") commenced this action by filing her Complaint in the Superior Court of the State of

Arizona, for the County of Maricopa, Case No. CV 2020-005070. Defendant received a copy of the Complaint by service on May 5, 2020.

2.     Thirty days have not passed since defendant first received any copy of the initial pleading setting forth the claim for relief.

**Federal Question Jurisdiction**

3.     The Complaint purports to seek damages under the Civil Rights Act of 1964, as amended, and alleges claims arising out of Plaintiff's employment with Defendant under 42 U.S.C. § 12111.

4.     Plaintiff's claim thus arises under the laws of the United States, and there is federal question jurisdiction within the meaning of 28 U.S.C. § 1331, and this action is removable under 28 U.S.C. § 1441 as one in which the District Court has original jurisdiction.

**Compliance With Removal Procedure**

5.     Pursuant to Rule 3.6(a), Local Rules of Practice for the United States District Court for the District of Arizona, attached hereto as "Exhibit A" is a copy of the Maricopa County Superior Court's Docket / Case Information.

6.     All process, pleadings, and orders that have been filed in this case are attached to this Notice of Removal as "Exhibit B," as required by 28 U.S.C. § 1446(a) and Rule 3.6(b), Local Rules of Practice for the United States District Court for the District of Arizona. Undersigned counsel hereby verifies, pursuant to Rule 3.6(a), Local Rules of Practice for the United States District Court for the District of Arizona, that the documents

comprising Exhibit B hereto are true and complete copies of such pleadings and other documents that have been filed in the state court proceeding.

7.      Pursuant to 28 U.S.C. § 1446(d) and Rule 3.6(a), Local Rules of Practice for the United States District Court for the District of Arizona, Defendant has filed a copy of this Notice of Removal with the Clerk of the Superior Court of the State of Arizona for the County of Maricopa, and a copy of the Notice of Removed Action filed in that court is attached hereto as "Exhibit C."

**DATED** this 22nd day of May, 2020.

DICKINSON WRIGHT PLLC

By: _/s/ D. Samuel Coffman_
D. Samuel Coffman
Amanda E. Newman
1850 North Central Ave., Ste. 1400
Phoenix, AZ 85004
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2020, I electronically transmitted the attached document to the Clerk of the Court using the CM/ECF system. The attached document will be served by email and first-class mail this same date upon the following:

Troy P. Foster
Megan N. Weides
THE FOSTER GROUP
518 East Willetta Street
Phoenix, AZ  85004
tfoster@thefosterlaw.com
mweides@thefosterlaw.com
*Attorneys for Plaintiff*

*/s/ Janet Hawkins*

4813-7155-7820 v1 [69364-8]

Exhibit A



Select Language
Powered by Google Translate

# Civil Court Case Information – Case History

## Case Information

Case Number: CV2020-005070   Judge:  Sanders, Teresa
File Date:  4/24/2020     Location: Downtown
Case Type:  Civil

## Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| Yvonne L Roberts | Plaintiff | Female | Troy Foster |
| Connectionsaz L L C | Defendant | | Pro Per |

## Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 5/8/2020 | AFS - Affidavit Of Service | 5/11/2020 | |
| **NOTE:** Certificate of Service by Private Process server / CONNECTIONS AZ | | | |
| 4/24/2020 | COM - Complaint | 4/27/2020 | |
| 4/24/2020 | CCN - Cert Arbitration - Not Subject | 4/27/2020 | |
| 4/24/2020 | CSH - Coversheet | 4/27/2020 | |

## Case Calendar

**There are no calendar events on file**

## Judgments

**There are no judgments on file**

# Exhibit B

**In the Superior Court of the State of Arizona**

**in and For the County of** Maricopa

CV 2020 - 005070

Case Number _____

## CIVIL COVER SHEET- NEW FILING ONLY
### (Please Type or Print)

Plaintiff's Attorney   Troy Foster & Megan Weides

Attorney Bar Number   017229 & 033552

Is Interpreter Needed?  ☐ Yes   ☒ No

If yes, what language(s):

COPY

APR 2 4 2020

COURT SEAL

CLERK OF THE SUPERIOR COURT
A. McLOONE
DEPUTY CLERK

| Plaintiff's Name(s): (List all) | Plaintiff's Address: | Phone #: | Email Address: |
|---|---|---|---|
| Yvonne L. Roberts | c/o The Foster Group | (602)461-7990 | tfoster@thefosterlaw.com |
| | 518 E. Willetta Street | | mweides@thefosterlaw.co |
| | Phoenix, AZ 85004 | | |

(List additional Plaintiffs on page two and/or attach a separate sheet).

Defendant's Name(s): (List All)

ConnectionsAZ, LLC, a corporation

_____

_____

(List additional Defendants on page two and/or attach a separate sheet)

## RULE 26.2 DISCOVERY TIER OR MONETARY RELIEF CLAIMED:

**IMPORTANT: Any case category that has an asterisk (\*) MUST have a dollar amount claimed or Tier selected.** State the monetary amount in controversy or place an "X" next to the discovery tier to which the pleadings allege the case would belong under Rule 26.2.

☒ Amount Claimed $ 300,000.00        ☐ Tier 1   ☒ Tier 2   ☐ Tier 3

## NATURE OF ACTION

Place an "X" next to the **one** case category that most accurately describes your primary case. **Any case category that has an asterisk (\*) MUST have a dollar amount claimed or Tier selected as indicated above.**

### 100 TORT MOTOR VEHICLE:

☐ 101 Non-Death/Personal Injury\*

☐ 102 Property Damage\*

☐ 103 Wrongful Death\*

Case No._____

**110 TORT NON-MOTOR VEHICLE:**

☐ 111 Negligence*
☐ 112 Product Liability – Asbestos*
☐ 112 Product Liability – Tobacco*
☐ 112 Product Liability – Toxic/Other*
☐ 113 Intentional Tort*
☐ 114 Property Damage*
☐ 115 Legal Malpractice*
☐ 115 Malpractice – Other professional*
☐ 117 Premises Liability*
☐ 118 Slander/Libel/Defamation*
☐ 116 Other (Specify) _____*

**120 MEDICAL MALPRACTICE:**

☐ 121 Physician M.D.*          ☐ 123 Hospital*
☐ 122 Physician D.O*          ☐ 124 Other*

**130 & 197 CONTRACTS:**

☐ 131 Account (Open or Stated)*
☐ 132 Promissory Note*
☐ 133 Foreclosure*
☐ 138 Buyer-Plaintiff*
☐ 139 Fraud*
☐ 134 Other Contract (i.e. Breach of Contract)*
☐ 135 Excess Proceeds-Sale*
☐ Construction Defects (Residential/Commercial)*
    ☐ 136 Six to Nineteen Structures*
    ☐ 137 Twenty or More Structures*
☐ 197 Credit Card Debt (Maricopa County Only)*

**150-199 OTHER CIVIL CASE TYPES:**

☐ 156 Eminent Domain/Condemnation*
☐ 151 Eviction Actions (Forcible and Special Detainers)*
☐ 152 Change of Name
☐ 153 Transcript of Judgment
☐ 154 Foreign Judgment

☐ 158 Quiet Title*
☐ 160 Forfeiture*
☐ 175 Election Challenge
☐ 179 NCC-Employer Sanction Action (A.R.S. §23-212)
☐ 180 Injunction against Workplace Harassment
☐ 181 Injunction against Harassment
☐ 182 Civil Penalty
☐ 186 Water Rights (Not General Stream Adjudication)*
☐ 187 Real Property *
☐ Special Action against Lower Courts
    (See Lower Court Appeal cover sheet in Maricopa)
☐ 194 Immigration Enforcement Challenge
    (A.R.S. §§1-501, 1-502, 11-1051)

**150-199 UNCLASSIFIED CIVIL:**

☐ Administrative Review
    (See Lower Court Appeal cover sheet in Maricopa)
☐ 150 Tax Appeal
    (All other tax matters must be filed in the AZ Tax
    Court)
☐ 155 Declaratory Judgment
☐ 157 Habeas Corpus
☐ 184 Landlord Tenant Dispute – Other*
☐ 190 Declaration of Factual Innocence (A.R.S. §12-771)
☐ 191 Declaration of Factual Improper Party Status
☐ 193 Vulnerable Adult (A.R.S. §46-451)*
☐ 165 Tribal Judgment
☐ 167 Structured Settlement (A.R.S. §12-2901)
☐ 169 Attorney Conservatorships (State Bar)
☐ 170 Unauthorized Practice of Law (State Bar)
☐ 171 Out-of-State Deposition for Foreign Jurisdiction
☐ 172 Secure Attendance of Prisoner
☐ 173 Assurance of Discontinuance
☐ 174 In-State Deposition for Foreign Jurisdiction
☐ 176 Eminent Domain– Light Rail Only*
☐ 177 Interpleader– Automobile Only*
☐ 178 Delayed Birth Certificate (A.R.S. §36-333.03)
☒ 183 Employment Dispute- Discrimination*

Case No._____

☐ 185 Employment Dispute-Other*          ☐ 163 Other*
☐ 196 Verified Rule 45.2 Petition                    _____
☐ 195(a) Amendment of Marriage License                    (Specify)
☐ 195(b) Amendment of Birth Certificate

## EMERGENCY ORDER SOUGHT

☐ Temporary Restraining Order     ☐ Provisional Remedy     ☐ OSC     ☐ Election Challenge

☐ Employer Sanction     ☐ Other (Specify) _____

## COMMERCIAL COURT (Maricopa County Only)

☐ This case is eligible for the Commercial Court under Rule 8.1, and Plaintiff requests assignment of this case to the Commercial Court. More information on the Commercial Court, including the most recent forms, are available on the Court's website at:

        https://www.superiorcourt.maricopa.gov/commercial-court/.

**Additional Plaintiff(s):**

_____

_____

**Additional Defendant(s):**

_____

_____

Troy P. Foster #017229
Megan N. Weides, #033552
**The Foster Group, PLLC**
518 East Willetta Street
Phoenix, Arizona 85004
Tel: 602-461-7990
tfoster@thefosterlaw.com
mweides@thefosterlaw.com
*Attorneys for Plaintiff*

COPY

APR 24 2020

CLERK OF THE SUPERIOR COURT
A. McLOONE
DEPUTY CLERK

## IN THE SUPERIOR COURT OF ARIZONA

## IN THE COUNTY OF MARICOPA

Yvonne L. Roberts, an individual,

                                   Plaintiff,

vs.

ConnectionsAZ, LLC, an Arizona
Corporation,

                                   Defendant.

Case No.:

CV 2020-005070

**COMPLAINT**

**(Jury Trial Demanded)**

For her Complaint against ConnectionsAZ, LLC ("the Company"), Plaintiff Yvonne L. Roberts ("Plaintiff") alleges as follows:

## Background Allegations and Jurisdiction

1.      At all times relevant to this Complaint, Plaintiff resided in and is a citizen of Maricopa County, Arizona.

2.      At all times relevant to this Complaint, Plaintiff worked for the Company.

3.      At all times relevant to this Complaint, the Company was a corporation authorized to conduct, and was conducting, business in Maricopa County, Arizona.

4.      Plaintiff worked in the role as a Registered Nurse ("RN") for the Company beginning on or around June 12, 2019.

5.      The Company employs 15 or more employees.

6.      The Company is not exempt from the Civil Rights Act of 1964, as amended.

1

7.    The Company is an employer as defined in 42 U.S.C. § 12111.

8.    Plaintiff was an employee as defined in 42 U.S.C. § 12111.

9.    Plaintiff filed a Charge of Discrimination against the Company with the EEOC on or about September 13, 2019 and another one on February 10, 2020. *See* Charge No. 540-2019-05295, attached as Exhibit 1.

10.    On February 14, 2020, the EEOC issued Plaintiff a Notice of Right to Sue, which is attached as Exhibit 2.

11.    Plaintiff's Complaint has been filed within 90 days from receipt of authorization to bring a civil action.

12.    Plaintiff has exhausted his administrative remedies.

13.    Jurisdiction and venue are appropriate in this Court.

### Picked On and Picked Out

14.    On August 2, 2019, Plaintiff worked a midnight shift at the Urgent Psychiatric Care Center ("UPC").

15.    Plaintiff was asked to work this shift by a manager, but she was not informed that she would be performing Licensed Practice Nurse ("LPN") duties.

16.    When she arrived for her shift, the charge nurse informed her that she would be performing the LPN duties, to which Plaintiff agreed and mentioned that it was not her preference to handle those tasks.

17.    Plaintiff worked her shift in a LPN role and during the shift, she notified the person in charge of scheduling that she was not interested in working as a LPN in the future so she would not like to be scheduled for those shifts.

18.    While signing off patient charts, the charge nurse approached Plaintiff and stated "I hear you don't like working as a LPN but you should know it doesn't matter if you are scheduled to be an RN or not.  If there is no LPN, you will be the one assigned to do it because the rest of us won't be doing it."

2

19.     The Plaintiff asked why the responsibility could not be shared, stated that she wants to work as an RN, and that she would remove herself from the schedule on the days that there was not a LPN was scheduled for.

20.     Plaintiff noticed the charge nurse and another RN huddled up together whispering and looking in her direction.

21.     Not long after, Plaintiff saw these two nurses going through all of the patient charts, which was not something ever done before.

22.     Plaintiff approached the two and asked them what they were doing.

23.     Both ignored the Plaintiff and kept chatting amongst themselves.

24.     Plaintiff heard them say "check everything, it looks like someone doesn't know what she is doing anyway" and laughed.

25.     Plaintiff asked if they were doing chart checks and asked if she could watch them do the check because she had never seen them do one before.

26.     Plaintiff grabbed a chart to check and both nurses continued to ignore her and refused to answer her questions about how chart checks are done at UPC.

27.     At 6:30 that morning, the Director of Nursing ("DON") arrived and asked if anyone needed to see her.

28.     About 10 minutes later, the DON came on the unit walking towards the Plaintiff and said "I see this is not going to work, come to my office."

**Plaintiff Unfairly Accused and Punished**

29.     When Plaintiff walked into the DON's office, the charging RN was there and the DON stated that the charging nurse had told her that Plaintiff had been making medical errors for 2 days.

30.     Plaintiff stated she did not know what that was about and the DON asked the charging RN if she had talked to Plaintiff about it, to which she said yes.

31.     Plaintiff denied that the charging nurse had talked to her so the DON asked the charging nurse if she had proof, to which said no.

3

32.     The charging nurse's "proof" was that Plaintiff "looked like the kind of person who didn't know what she was doing."

33.     The DON left the office to check for medical errors and came back stating that were none.

34.     Then the charging nurse's "proof" was that a Doctor had stated that Plaintiff made a medical error.

35.     The DON left the office to talk to the Doctor who denied that Plaintiff had made a medical error.

36.     The DON returned and told the charging nurse that she had no right to accuse another RN of a medical error because she "looked like someone who didn't know what she was doing."

37.     After the charging nurse left the office, the DON called the RN who handles scheduling and told her to remove the Plaintiff from all of her scheduled shifts because she did not want her working with the charging nurse.

38.     Plaintiff was removed from 23 scheduled shifts.

### Acknowledging the Issue Makes It Worse

39.     The DON decided that she was going to place the Plaintiff in a position at the meth clinic she was running.

40.     Understandably upset, the Plaintiff expressed that it was unfair she was losing all of her shifts and was worried about paying her bills.

41.     The DON reassured the Plaintiff that she would receive the same amount of shifts at the meth clinic.

42.     Then the DON apologized to Plaintiff for this happening and that she had heard that the charging nurse has a reputation as a racist.

43.     The DON stated "I'm aware they don't want my black ass in this position either!"

4

44. When the Plaintiff protested the change, the DON told her "don't worry, the Lord will take care of it," "be glad you don't have to come up in this place," and that she would see her on Monday at the meth clinic.

45. After not receiving further instruction from the DON, the Plaintiff picked up shifts that the charging nurse was not working.

46. The next week, Plaintiff saw the DON twice and when she asked for her schedule at the meth clinic, the DON blew her off.

47. A week later, the scheduled RN contacted her to set up a training of 3, 8 hour shifts, and that she would be on call there in case the full time RN was out.

48. Meanwhile, the charging nurse and the other RN were telling the rest of the staff to not listen to Plaintiff and began alienating her.

49. The staff stopped following Plaintiff's directions and she had heard the charging nurse's staff calling her "Detroit," which is where the Plaintiff is from.

50. One of these staff members asked Plaintiff if she was a "thug."

51. Plaintiff even heard the charging nurse refer to her as the "biracial nurse" on multiple occasions.

52. This kind of behavior continued until August 31, 2019 when the DON contacted the Plaintiff at home.

53. She told the Plaintiff that she was suspended pending investigation.

54. When Plaintiff asked what she did and asked the DON to repeat herself, the DON yelled "you heard me" and hung up.

55. Plaintiff then texted the DON stating she had never been suspended before, asked for more information, and asked why the charging nurse and other RN had not been suspended, especially when the DON herself found that the charging nurse had lied.

56. The DON's response was that the Plaintiff would be paid for the days that she was scheduled to work until the investigation was completed.

57. However, the Plaintiff was never paid for those days: September 11, 12, 13, and 14, 2019.

**Textbook Retaliation**

58. While on suspension, the Plaintiff contacted the EEOC about filing a charge of racial discrimination.

59. She had noticed that the schedule had been padded, meaning that there were no available shifts for the first 10 days of the month, which was unheard of at UPC.

60. These 10 days coincided with Plaintiff's suspension.

61. On September 11, 2019, the DON texted the Plaintiff with the VP copied in, instructing Plaintiff that they wanted to meet with her.

62. A meeting was scheduled for September 16, 2019 at 8:00 a.m.

63. Plaintiff requested that HR be present for this meeting, but was told no. Plaintiff called HR to see if they could sit in and they also told her no.

64. When she arrived at the meeting, the DON and the VP told her that staff had complaints about her not being part of the team and that they heard her make a statement about complaining to the EEOC about her treatment there.

65. The VP stated if she pursed the charged, it would jeopardize her employment.

66. When she tried to tell the VP about her situation with the charging nurse and other RN, he told her that they had been there for a long time and they were his "friends."

67. The VP then asked how many hours she had worked, to which Plaintiff struggled to respond because she was so taken aback by his comments.

68. The VP got frustrated that she could not recall her hours on the spot and reminded her that she needed to "let the EEOC thing go and concentrate on her job or you won't be here."

69. The Plaintiff remained on suspension until UPC received her charge of discrimination from the EEOC.

70. The DON texted her stating that she could pick up any shifts if they were available.

71. When the Plaintiff contacted the scheduler, she was told that earliest available shifts were on October 23 and 24.

72.    Once Plaintiff finally was able to return to work on October 23, 2019, she was given more patients than her peers and forced to work longer hours.

73.    When it was close to Plaintiff's shift ending, she was admitting a patient into the computer and another patient came in.

74.    Plaintiff's new supervisor told her to admit that patient and when she told him that she was still working on the current patient, he accused her of insubordination.

75.    Plaintiff took the patient even though her shift had ended and there were 3 other nurses on staff.

76.    The supervisor followed her and informed her that he was sent to the location by the VP with instructions to watch her.

77.    Plaintiff reported this to the DON and the VP but neither responded.

78.    This supervision continued until Plaintiff's termination.

### Allegations Concerning Damages

79.    The unlawful suspension of Plaintiff resulted in unpaid time off and lost wages despite the Company's assurance that she would be paid.

80.    Plaintiff's termination eliminates her future income and resulted in a loss of wages.

81.    Plaintiff's termination makes finding replacement employment difficult.

82.    Plaintiff has suffered emotional distress, lost wages, and compensatory damages as a result of the discriminatory treatment and retaliation.

### LEGAL CLAIMS

### Count One:  Race Discrimination

83.    Plaintiff reincorporates allegations in paragraphs 1-83 as if fully set forth here.

84.    Plaintiff's supervisor, the charging nurse, openly referred to the Plaintiff as the "biracial nurse" or "Detroit."

85.    These are racially charged terms directed at the Plaintiff's race or heritage.

86.    The charging nurse accused the Plaintiff of making errors simply because "she looked like the kind of person who would."

87.    Plaintiff was the only biracial nurse on that shift and all the other nurses were white or Hispanic.

88.    After the charging nurse's accusation proved to be false, she and her coworkers complained about Plaintiff not "being a team member", causing her to be wrongfully suspended.

89.    However, it was the charging nurse who alienated the Plaintiff by making false accusations against her and using racial slurs to refer to her.

90.    Plaintiff was the only person suspended or disciplined, even though she had complained about the charging nurse's behavior as well.

91.    Plaintiff is entitled to back pay, compensatory damages, and her reasonable attorneys' fees and costs.

## Count Two:  Retaliation

92.    Plaintiff reincorporates allegations in paragraphs 1-93 as if fully set forth here.

93.    Plaintiff was suspended on August 31, 2019.

94.    Plaintiff filed a charge of discrimination with the EEOC on September 13, 2019.

95.    During her meeting with the DON and VP on September 16, the Plaintiff's job was threatened if she proceeded with her EEOC complaint.

96.    Upon information and belief, only when the Company received Plaintiff's EEOC charge, the Plaintiff was told that she could return to work.

97.    The Company delayed her ability to return to work for an entire month, even though she had previously been scheduled shifts that month prior to her suspension.

98.    Once she finally returned to work, Plaintiff was subjected to harsher working conditions and longer hours.

8

99.   Plaintiff engaged in protected activity when she filed her charge with the EEOC.

100.   As a result, the Company made Plaintiff's work hours and conditions worse for engaging in protected activity.

101.   Plaintiff is entitled to back pay, compensatory damages, and her reasonable attorneys' fees and costs.

### Conclusion

**THEREFORE**, Plaintiff respectfully requests the following relief:

A.  A judgment in her favor against the Company;

B.  An award of back pay and compensatory damages;

C.  Pre- and post-judgment interest on award; and

D.  Reasonable attorneys' fees and costs.

E.  All other appropriate equitable relief.

**DATED** this 24th day of April, 2020.

**The Foster Group, PLLC**

*/s/ Troy P. Foster*
Troy P. Foster
Megan Weides
518 East Willetta Street
Phoenix, Arizona 85004
*Counsel for Plaintiff*

Troy P. Foster #017229
Megan N. Weides, #033552
**The Foster Group, PLLC**
518 East Willetta Street
Phoenix, Arizona 85004
Tel: 602-461-7990
tfoster@thefosterlaw.com
mweides@thefosterlaw.com
*Attorneys for Plaintiff*



**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN THE COUNTY OF MARICOPA**

| | |
|---|---|
| Yvonne L. Roberts, an individual,<br><br>                  Plaintiff,<br><br>vs.<br><br>ConnectionsAZ, LLC, a corporation.<br><br>                 Defendants. | Case No.: CV 2020-005070<br><br>**CERTIFICATE OF COMPULSORY ARBITRATION**<br><br>**(Jury Trial Demanded)** |

The undersigned certified that she knows the dollar limits and any other limitations set forth by local rules of practice for the applicable superior court, and further certifies this case *is not* subject to compulsory arbitration, as provided by Rules 72 through 76 of the Arizona Rules of Civil Procedure because the amount of the award sought exceeds the jurisdictional limit set forth in L.R. 3.10(a).

DATED this 24th day of April, 2020.

The Foster Group, PLLC

*/s/ Troy P. Foster*
Troy P. Foster
Megan N. Weides
518 East Willetta Street
Phoenix, Arizona 85004
*Counsel for Plaintiff*

1

Clerk of the Superior Court
*** Electronically Filed ***
M. De La Cruz, Deputy
5/8/2020 3:37:00 PM
Filing ID 11641535

## SUPERIOR COURT OF ARIZONA IN MARICOPA COUNTY

**Yvonne L. Roberts, an individual,**

    *Plaintiff(s) / Petitioner(s)*

v.

                                                          Case No.: CV2020-005070

**ConnectionsAZ, LLC, an Arizona corporation,**

    *Defendant(s) / Respondent(s)*

### <u>CERTIFICATE OF SERVICE BY PRIVATE PROCESS SERVER</u>

I, Ruben Herrera, being duly sworn, state:

I am an Arizona private process server in good standing, Registered with Maricopa County Superior Court, #MC-8310. I am 21 years or older and not a party to this action.

I served the following documents on ConnectionsAZ, LLC in Maricopa County, AZ on May 5, 2020 at 3:04 pm at ConnectionsAZ, 1201 S. 7th Avenue, Phoenix, AZ 85007 by leaving the documents with Daren F. who as Charge Nurse is authorized by appointment or by law to receive service of process for ConnectionsAZ, LLC.

Civil Summons; Civil Cover Sheet; Complaint; Certificate of Arbitration

Additional Description:
After speaking with the gentleman outside of the facility, he called the Charge Nurse Daren F. After a couple of minutes, he came out and accepted service. He made a comment that they're not corporate but that he would make sure that it went to the powers above. I then explained to him that their statutory agent instructed us to serve the facility directly.

White Male, est. age 45, glasses: Y, Other hair, 200 lbs to 220 lbs, 6' to 6' 3".

I DECLARE UNDER PENALTY OF PERJURY THAT THE FACTS HEREIN ARE TRUE AND CORRECT.

Executed in __Unknown__ , __Unknown__  on
__5/6/2020__ .

_Ruben Herrera_
Signature
Ruben Herrera
(602) 561-9386

Exhibit C

D. Samuel Coffman (#011428)
scoffman@dickinsonwright.com
Amanda E. Newman (#032462)
anewman@dickinsonwright.com
**DICKINSON WRIGHT PLLC**
1850 North Central Avenue, Suite 1400
Phoenix, AZ 85004
Phone: (602) 285-5000
Fax: (844) 670-6009
Firm E-Mail: courtdocs@dickinsonwright.com

*Attorneys for Defendant*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| YVONNE L. ROBERTS,<br><br>     Plaintiff,<br>  v.<br><br>CONNECTIONSAZ LLC,<br><br>     Defendant. | Case No. CV2020-005070<br><br><br>**NOTICE OF REMOVAL TO FEDERAL COURT**<br><br><br>**(Assigned to Hon. Teresa Sanders)** |

   Please take notice that, pursuant to 28 U.S.C. § 1446(d), Defendant ConnectionsAZ LLC is removing this case this date to the United States District Court for the District of Arizona. The Notice of Removal effecting removal of this case to that Court is attached (without exhibits) as "Exhibit A."

**DATED** this 22nd day of May, 2020.

DICKINSON WRIGHT PLLC

By: _/s/ D. Samuel Coffman_____
D. Samuel Coffman
Amanda E. Newman
1850 North Central Ave., Ste. 1400
Phoenix, AZ 85004
*Attorneys for Defendant*

**ORIGINAL** of the foregoing filed electronically and
**COPY** mailed this 22nd day of May, 2020, to:

Troy P. Foster
Megan N. Weides
THE FOSTER GROUP
518 East Willetta Street
Phoenix, AZ  85004
tfoster@thefosterlaw.com
mweides@thefosterlaw.com
*Attorneys for Plaintiff*

*/s/ Janet Hawkins_____*

4831-4316-7932 v1 [69364-8]