Troy P. Foster #017229
Megan N. Weides, #033552
**The Foster Group, PLLC**
902 W. McDowell Road
Phoenix, Arizona 85007
Tel: 602-461-7990
tfoster@thefosterlaw.com
mweides@thefosterlaw.com
*Attorneys for Plaintiff*

D. Samuel Coffman #011428
Amanda E. Newman #032462
**DICKINSON WRIGHT PLLC**
1850 N. Central Avenue, Suite 1400
Phoenix, Arizona 85004
Tel: 602-285-5000
scoffman@dickinsonwright.com
anewman@dickinsonwright.com
*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Yvonne L. Roberts, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>ConnectionsAZ LLC, an Arizona corporation,<br><br>Defendant. | No.: 2:20-CV-01006-MTL<br><br>**JOINT PROPOSED CASE MANAGEMENT REPORT** |

Pursuant to the Court's June 5, 2020 Order Setting Rule 16 Scheduling Conference [D.E. 5], the parties met and conferred as required by Federal Rule of Civil Procedure 26(f) and have developed this Joint Proposed Case Management Report:

1

1. **The parties who attended the Rule 26(f) Meeting and assisted in developing the Case Management Report:**

Plaintiff's counsel, Megan Weides, and Defendant's counsel, Amanda Newman, attended the Rule 26(f) meeting and assisted in developing this Report.

2. **A list of the parties in the case, including any parent corporations or entities:**

Plaintiff:        Yvonne L. Roberts

Defendant:   ConnectionsAZ LLC

3. **A short statement of the nature of the case (3 pages or less):**

*Plaintiff's Statement*

Plaintiff was employed by the Defendant as a Registered Nurse. On August 2, 2019, Plaintiff was working a midnight shift and was asked to perform Licensed Practice Nurse ("LPN") duties. She agreed and mentioned that it was not her preference to handle those tasks. Plaintiff informed the charge of scheduling that she was not interested in working LPN shifts in the future and would not like to be scheduled for those shifts. The charge nurse became upset with this and told Plaintiff that if there was no LPN scheduled, she would be the one assigned to do it. Plaintiff asked why the responsibility could not be shared and stated she would remove herself from the schedule on the days that an LPN was not scheduled for. The charging nurse and another nurse then decided to review Plaintiff's charts for errors and laughed at her claiming that she did not look like someone who knew what she was doing. The Director of Nursing ("DON") arrived not long after and saw what was going on. She ordered the Plaintiff to come to her office.

When Plaintiff went into the DON's office, the charging nurse was there and the DON stated that the charging nurse informed her that Plaintiff had been making medical mistakes for 2 days. This was the first time Plaintiff had heard this and Plaintiff denied that the charging nurse had ever told her. The DON asked if the charging nurse had proof that she talked to Plaintiff, which she did not. Her proof was that Plaintiff looked like the kind of person who did not know what she was doing. After the DON checked Plaintiff's

work and found no errors, the charging nurse said a doctor had told this. The DON checked with that doctor, who denied Plaintiff had made a medical error. After the charging nurse left, the DON called the scheduling nurse and asked her to remove Plaintiff from all her scheduled shifts because she did not want Plaintiff working with the charging nurse. Plaintiff was removed from 23 shifts.

Plaintiff was understandably upset by this and was worried about paying her bills. The DON reassured her that she had a position for her at a meth clinic and would receive the same amount of shifts. The DON also stated that she heard the charging nurse had a reputation as a racist and mentioned that they did not want her "black ass in this position either." Plaintiff was still upset that she was being the one removed, but the DON would not hear it and told Plaintiff she would see her Monday at the meth clinic.

The next week, Plaintiff never received instructions from the DON so she picked up shifts that the charging nurse was not working. Plaintiff saw the DON twice and asked about her schedule at the meth clinic, but the DON blew her off. A week later, the scheduling nurse contacted Plaintiff to set up 3, 8-hour training shifts for the meth clinic, and stated her role was to be on call for the full time nurse, not working full time herself. Meanwhile, the charging nurse told staff to stop listening to Plaintiff and began alienating her from everyone. The Plaintiff heard the staff call her by various racially-charged slurs like "biracial nurse", "Detroit" (where Plaintiff is from), and "thug". This continued until August 31, 2019 when the DON contacted the Plaintiff at home. She told the Plaintiff that she was being suspended pending investigation and refused to tell her why, then hung up on her.

While the suspension was pending, Plaintiff filed a charge of discrimination with the EEOC. After 11 days off, the DON asked Plaintiff to meet with her and the VP. At the meeting, Plaintiff was informed that staff had made complaints about her not being part of the team and her threatening to file with the EEOC about her treatment. The VP stated if she pursed the charge, it would jeopardize her employment and tried to justify the

charging nurse's behavior. The Plaintiff did not drop her charge with the EEOC and remained on suspension until the Defendant received it. As soon as it was received, the DON told the Plaintiff that she could now pick up any available shifts. However, there were no shifts available until the end of October, over a month later.

Plaintiff finally was able to return to work on October 23 and noticed she was given more work and patients than her peers. The supervisor followed her around and admitted her was sent to that location by the VP with instructions to watch her. The Plaintiff reported this to the DON and VP, but neither responded. Plaintiff eventually was terminated.

Plaintiff maintains that Defendant discriminated against her based on her race. Moreover, Defendant terminated Plaintiff in retaliation for exercising her federally-protected rights by filing a complaint with the EEOC. Plaintiff maintains that Defendant's stated reasons for her termination are pretextual.

*Defendant's Statement*

First, there is no support for Plaintiff's contentions that she was treated adversely due to her race. Charge nurse Rosemary Brown raised concerns that Plaintiff did not respond well to instruction or criticism, resisted directives, and engaged in questionable practices; multiple of Plaintiff's coworkers similarly raised concerns about her professionalism and work habits; and any actions taken were based on Plaintiff's failings in those areas. Indeed, when the Director of Nursing called Plaintiff into a meeting to discuss professionalism in the workplace, Plaintiff was insubordinate and referred to the meeting as "ridiculous" and "laughable." When ConnectionsAZ investigated, Plaintiff was unable to provide examples of the alleged discrimination or any evidence to support her allegations that racially-motivated actions had been taken against her. Moreover, while Plaintiff complains about being assigned to work LPN duties, this was not an assignment given specifically or predominantly to Plaintiff. Rather, all RNs employed by

4

ConnectionsAZ regularly take on those duties, as needed based on shifts and staffing levels.

Second, there was no retaliation against Plaintiff. Her complaints resulted in no adverse action taken against her. She was not prevented from working, or otherwise discriminated against, in retaliation for filing her EEOC complaints. Although she missed a few shifts while her claims were being promptly and thoroughly investigated, the vast majority of the time she was not working was due to her refusing and turning down shifts. Indeed, after working a shift on October 23, 2019, Plaintiff never took another shift.

In addition to the factual positions stated above, ConnectionsAZ's defenses to Plaintiff's claims include the following: no discrimination occurred; no retaliation occurred; Plaintiff failed to exhaust administrative remedies; and all employment decisions concerning Plaintiff were based on legitimate, nondiscriminatory, and nonretaliatory business reasons unrelated to Plaintiff's race.

4. **A description of the principal factual and legal disputes in the case:**
- Whether adverse actions were taken against Plaintiff
- The reasons for any such adverse actions
- Whether Plaintiff was discriminated against on the basis of race
- Whether adverse actions were taken against Plaintiff based on retaliation
- Whether there were legitimate, nondiscriminatory, and nonretaliatory business reasons for any purportedly adverse actions taken against Plaintiff
- Assuming that Plaintiff had a claim (she does not) did claimant take efforts to mitigate her damages

5. **The jurisdictional basis for the case, describing the basis for jurisdiction and citing specific jurisdictional statutes:**

This Court has original jurisdiction of the Title VII claims pursuant to 28 U.S.C. § 1331 because the claims involve a federal question. *See* 42 U.S.C. § 2000e.

6. **Any parties which have not been served and an explanation of why they have not been served, and any parties which have been served but have not answered or otherwise appeared:**

None.

7. **A statement of whether any party expects to add additional parties to the case or otherwise to amend the pleadings:**

The parties do not anticipate adding parties or otherwise amending the pleadings.

8. **A listing of contemplated motions and a statement of the issues to be decided by these motions:**

If appropriate, at the close of discovery, the parties may file partially or fully dispositive motions.

9. **Whether the case is suitable for reference to a United States Magistrate Judge for a settlement conference or trial.**

The parties do not believe that this case is suitable for reference to a United States Magistrate Judge for trial. The parties believe that it is too early to assess settlement, but will inform the Court if, and when, reference to a Magistrate Judge for a settlement conference is appropriate.

10. **The status of related cases pending before other courts or other judges of this Court**:

There are no related cases pending before this District Court.

11. **A discussion of any issues relating to preservation, disclosure, or discovery of electronically stored information, including the parties' preservation of electronically stored information and the form or forms in which it will be produced:**

The parties have not experienced any issues related to the preservation or discovery of items. The parties have discussed ESI and to her knowledge, Plaintiff does not have any relevant ESI related to her claims. Defendant has not yet identified whether it has an electronically stored information related to this lawsuit. If it does, the volume likely is

modest. Defendant will produce any such electronically stored information in native format or in searchable PDFs.

**12. A discussion of any issues relating to claims of privilege or work product:**

The parties do not anticipate any issues with respect to privilege or work product.

**13. A discussion of whether an order under Federal Rule of Evidence 502(d) is warranted in this case:**

The parties do not believe at this time that an order pursuant to Rule 502(d) is warranted.

**13. A discussion of necessary discovery within the scope of Rule 26(b)(1):**

    **a.    The extent, nature, and location of discovery anticipated by the parties and why it is proportional to the needs of the case:**

The Plaintiff anticipates propounding written discovery and expects to take a limited number of depositions – which will take place in Arizona. This case only requires evidence concerning Plaintiff's allegations, Defendant's response, treatment of Plaintiff, and the reasons for termination along with evidence of pretext. As such, discovery can be streamlined given this scope.

At this time, Defendant anticipates propounding written discovery within Arizona and deposing Plaintiff within Arizona.

    **b.    Suggested changes, if any, to the discovery limitations imposed by the Federal Rules of Civil Procedure:**

The parties do not believe that any changes to discovery limitations are necessary.

    **c.    The number of hours permitted for each deposition, unless extended by agreement of the parties:**

The parties do not believe that any deposition should take longer than seven hours. Plaintiff expects that a total of 20 hours for Plaintiff's depositions should suffice.

**14. A statement of when the parties exchanged or will exchange Federal Rule of Civil Procedure 26(a) initial disclosures:**

The parties have agreed to exchange initial disclosures by July 17, 2020.

**15. Proposed specific dates for each of the following:**

    **a. A deadline for amending the pleadings:**

    November 13, 2020.

    **b. A deadline for lodging a proposed Joint Stipulated Protective Order with the Court, if desired:**

    February 5, 2021.

    **c. A deadline for the completion of fact discovery and for pretrial disclosures pursuant to Rule 26(a)(3):**

    March 12, 2021.

    **d. Dates for full and complete expert disclosures pursuant to Federal Rule of Civil Procedure 26(a)(2)(A)-(C):**

    September 25, 2020 (Plaintiff); October 30, 2020 (Defendant);

    December 4, 2020 (Rebuttals).

    **e. A deadline for completion of all expert discovery:**

    February 5, 2021.

    **f. A date by which the parties shall have engaged in face-to-face good faith settlement talks and a description of settlement communications to-date:**

    February 5, 2021. There have been no settlement communications to-date.

    **g. A deadline for filing dispositive motions:**

    April 16, 2021.

**16. Whether a jury trial has been requested and whether the request for a jury trial is contested (if the request is contested, briefly set forth the reasons):**

A jury trial has been properly requested. It is not contested.

**17.** **The estimated length of trial and any suggestions for shortening the trial**:

Four days.

**17.** **The prospects for settlement, including any request of the Court for assistance in settlement efforts**:

The parties believe that it is too early to assess the prospects for settlement; however, the parties will request the Court's assistance when necessary and appropriate.

**18.** **Any other matters that will aid the Court and parties in resolving this case in a just, speedy, and inexpensive manner as required by Federal Rule of Civil Procedure 1**:

None.

    **RESPECTFULLY submitted** this 22nd day of June, 2020.

**The Foster Group, PLLC**

<u>/s/Megan N. Weides</u>
Troy P. Foster
Megan N. Weides
902 W. McDowell Road
Phoenix, Arizona 85007
*Counsel for Plaintiff*

**Dickinson Wright, PLLC**

<u>/s/ Amanda E. Newman (with permission)</u>
D. Samuel Coffman
Amanda E. Newman
1850 N. Central Avenue, Suite 1400
Phoenix, Arizona 85004
*Counsel for Defendant*

<u>/s/ Christina Garcia</u>